UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JESSICA S.,                                          )
                                                     )
                          Plaintiff,                 )
                                                     )          No. 20-cv-3920
              v.                                     )
                                                     )          Magistrate Judge Susan E. Cox
KILILO KIJAKAZI, Commissioner of the                 )
Social Security Administration,                      )
                                                     )
                          Defendant.                 )

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jessica S.[1] ("Plaintiff") appeals the decision of the Commissioner of the Social

Security Administration ("Commissioner") denying her application for disability insurance benefits

("DIB") under the Social Security Act. The Parties have filed cross motions for summary judgment.

For the reasons detailed below, the Commissioner's Motion for Summary Judgment (dkt. 23) is

denied and Plaintiff's motion (dkt. 17) is granted. The case is remanded for further proceedings

consistent with this opinion.

**I.   Background**

     **A.   Procedural History**

     On September 18, 2018, Plaintiff filed claims for DIB with an onset date of November 16,

2016. (R. 20.) Those claims were denied initially and upon reconsideration, after which Plaintiff

timely requested a hearing before an Administrative Law Judge ("ALJ"). The hearing was held on

January 14, 2020. (*Id*.) On March 20, 2019, ALJ Edward Studzinski denied Plaintiff's claim, finding

her not disabled under the Act and therefore ineligible for benefits. (R. 20-32.) The Appeals Council

denied Plaintiff's request for review on May 7, 2020, (R. 1), leaving the ALJ's decision as the final

---

[1]   In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by
her first name and the first initial of her last name(s).

decision of the Commissioner, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). Plaintiff appealed that decision to the United States District Court for the Northern District of Illinois on July 6, 2020. (Dkt. 1.) Both parties filed multiple requests for extensions on their briefs, and the appeal became fully ripe on May 24, 2021.

The ALJ's March 20, 2019 decision followed the five-step analytical process required by 20 C.F.R. § 416.920. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since November 16, 216. (R. 22.) At step two, the ALJ concluded that Plaintiff has the severe impairments degenerative disc disease, obesity, and post-traumatic stress disorder ("PTSD"). (*Id*.) At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of a listed impairment. (*Id*.) The ALJ next found that Plaintiff retained the residual functional capacity ("RFC") to perform less than the full range of sedentary work, with the following restrictions: occasionally lift up to ten pounds, and lighter weights frequently; stand/walk briefly for a total of two out of eight hours; must be allowed to use a cane at all times when walking for longer than five minutes; may occasionally climb ramps and stairs; may occasionally stoop, kneel, crouch, and crawl, but can never balance or climb ladders, ropes, or scaffolds; should avoid concentrated exposure to noise exceeding what is generally encountered in an office environment; is limited to non-hazardous environments; is limited to simple, routine tasks, work involving no more than simple decision-making, and no more than occasional and minor changes in the work setting; is limited to work requiring exercise of only simple judgment; no work which requires multi-tasking; no work in small, enclosed rooms; no work which requires significant self-direction; no work involving direct public service, in person or over the phone, although Plaintiff can tolerate brief and superficial interaction with the public which is incidental to her primary job duties; no work in crowded, hectic environments; and is limited to brief and superficial interaction with supervisors and co-workers, with no tandem tasks. (R. 25.) At step four, the ALJ concluded

2

Plaintiff was unable to perform her past relevant work. (R. 31.) At step five, the ALJ determined that, in light of Plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy she can perform. (*Id.*) These findings led to the conclusion that Plaintiff is not disabled as defined by the Social Security Act. (R. 32.)

### B. Relevant Medical History

For the purposes of this opinion, the Court will only focus on Plaintiff's mental health impairments and the treatment related to them. The record is mixed on Plaintiff's mental health condition. The bulk of her mental health treatment began in 2016, when she presented to her primary care physician, Dr. Todd A. Gephart, and reported little interest in doing things, sleeplessness, lethargy, trouble concentrating, and feeling bad about herself; on the other hand, she also reported she did not feel down or hopeless and denied any suicidal or self-harming thoughts. (R. 507.) Dr. Gephart diagnosed Plaintiff with major depressive disorder. (R. 508.) Approximately three months later, she presented with largely the same symptoms; Dr. Gephart once again diagnosed her with major depressive disorder and started her on Lexapro, a common anti-depressant. (R. 496-97.) At a follow-up the next month, Plaintiff reported feeling much better on the Lexapro and had no new issues. (R. 493.)

Approximately one year later, on August 9, 2017, Plaintiff underwent a psychiatric evaluation related to her disability application with the Department of Veterans' Affairs ("VA"). The VA psychologist, Dr. Rosa LaPietra, Psy. D., noted that Plaintiff displayed, *inter alia*, depressed mood, anxiety, suspiciousness, panic attacks, chronic sleep impairment, mild memory loss, hypervigilance, difficulty adapting to stressful circumstances, and impaired impulse control. (R. 720.) She was diagnosed with PTSD. (*Id.*) On August 10, 2018, the VA found that Plaintiff's PTSD was seventy percent disabling, and that she was "unable to secure or follow a substantially gainful occupation as a result of [Plaintiff's] service-connected disabilities." (R. 615.)

On June 6, 2017, Plaintiff began to treat regularly with advance practice nurse ("APN") Denise Druck. (R. 998.) Plaintiff was referred to Ms. Druck by Dr. Gerhart because Plaintiff stated that Lexapro was no longer effective in treating her depression. (R. 998.) Plaintiff complained of mood swings, irritability, and depression. (*Id*.) Ms. Druck diagnosed her with bipolar disorder and binge eating disorder, but noted she was cooperative, well-oriented, and that her cognition was generally intact. (*Id*.) Due to the bipolar diagnosis, Ms. Druck changed Plaintiff's medication, which Plaintiff claimed helped her feel better at her next appointment. (R. 997.) At that appointment, Ms. Druck included a diagnosis of attention deficit hyperactivity disorder and prescribed Adderall. (*Id*.) At her next visit, on July 26, 2017, Plaintiff told Ms. Druck that the Adderall had helped her mood and functioning for approximately one week before making her feel restless; Ms. Druck added PTSD to the diagnoses and began to taper Plaintiff's Lexapro. (R. 994.) These diagnoses held steady for the next few encounters while Ms. Druck attempted to alter Plaintiff's medication to better treat her mental illness. (R. 980-994.) At various points, Ms. Druck's colleague, James Sandstrom, LCPC, provided therapy services to Plaintiff and added diagnoses of moderate recurrent major depression (R. 980), generalized anxiety disorder (R. 977), and obsessive-compulsive disorder ("OCD") (R. 977). On February 5, 2018, Plaintiff continued her regular mental health treatment regimen with Ms. Druck. Plaintiff reported low energy, sleeplessness, irritability, and mood swings. (R. 1200). Ms. Druck noted that Plaintiff showed a sad and sullen affect, impaired concentration, and appeared fatigued. (R. 1200-1201.) Ms. Druck diagnosed Plaintiff with OCD, PTSD, ADHD, bipolar disorder, and binge eating disorder. (R. 1200.) The remainder of the treatment notes from the Ms. Druck during her regular appointments with Plaintiff show consistent complaints with steadily worsening symptoms. (R. 1178-1200.) In the last note, dated May 15, 2019, Plaintiff reported more frequent depressive episodes, escalating PTSD symptoms, and that "she has been more depressed, anxious, and having mood swings." (R. 1180.) Additionally, throughout the treatment notes, there are several

reports that Plaintiff was unwilling or unable to leave her home without the support of husband or medication or both. (R. 955, 962, 965, 976, 979, 983.)

Ms. Druck completed a Residual Functional Capacity Questionnaire (the "RFC Questionnaire") for Plaintiff on December 4, 2019. (R. 1263-1267.) The RFC Questionnaire painted a fairly bleak picture of Plaintiff's employment prospects. The diagnoses included bipolar disorder, PTSD, agoraphobia with panic disorder, OCD, ADHD, and insomnia. (R. 1263.) Ms. Druck opined that Plaintiff would be unable to meet competitive standards in the following areas: maintaining regular attendance and punctuality within customary, strict tolerances; working in coordination with others without being unduly distracted; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; responding appropriately to changes in a routine work setting; dealing with normal work stress; understanding, remembering, and carrying out detailed instructions; setting realistic goals; dealing with stress of semiskilled and skilled work; interacting appropriately with the general public; traveling in unfamiliar places; and using public transportation. (R. 1266-67.) She also stated that Plaintiff's mental impairments would cause her to be absent more than four days per month. (R. 1267.)

On January 14, 2019, Plaintiff had a psychological consultative evaluation performed by Michael E. Stone, Psy. D., for the Bureau of Disability Determination Services. (R. 1136-1140.) Dr. Stone noted Plaintiff was cooperative with an adequate ability to relate, unremarkable mood, and exhibited no impairment in calculations, general knowledge, ability to compare and contrast objects, judgment, abstract thinking, or memory. (R. 1138-39). Dr. Stone opined that Plaintiff had a fair ability to relate to others; understand, remember, and follow simple instructions; maintain the attention, concentration, persistence, and pace required to perform simple, repetitive tasks; and the adaptive capacity to withstand the stress and pressures associated with day-to-day work activity (R. 1136,

1139-40.)

The record also contains opinions from two non-examining state agency consultants. On February 14, 2019, Gayle Williamson, Psy. D., found that Plaintiff "retains the mental capacity to understand, remember and concentrate sufficient in order to carry out 1-2 step instructions/tasks and to sustain efforts for a normal work period…make simple work decisions…interact and communicate with others sufficiently in a work setting…[and] adapt to simple, routine changes with gradual introduction and pressures in the work environment." (R. 105.) On June 19, 2019, Thomas Low, PhD., made the exact same findings verbatim. (R. 128.)

### C.    The ALJ's Opinion

In determining Plaintiff's mental residual functional capacity, the ALJ relied on the opinions of Drs. Stone, Williamson, and Low to support his findings. However, the ALJ rejected Ms. Druck's RFC Questionnaire, finding that it was not persuasive.

The ALJ analyzed Ms. Druck's opinion as follows:

> The undersigned does not find a recent opinion from a treating source regarding the claimant's mental residual functional capacity persuasive. Evidence in the record including her testimony, numerous medical appointments, and her reports regarding walking outside and at department stores contradict the statement that the claimant could not leave her home or interact appropriately with the general public. The evidence does not show that she would be seriously limited or unable to perform unskilled skilled (sic) work. In fact, the largely normal treating source and consultative mental status examinations show that she is not so limited. Finally, there is no support for the opinion that the claimant would miss more than four days of work per month.

(R. 29 (internal citations omitted).)

For the reasons discussed more fully below, the Court does not believe the ALJ adequately performed the analysis required by the Social Security regulations.

## II.  Social Security Regulations and Standard of Review

The Social Security Act requires all applicants to prove they are disabled as of their date last

6

insured to be eligible for disability insurance benefits. ALJs are required to follow a sequential five-step test to assess whether a claimant is legally disabled. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the severe impairment meets or equals one considered conclusively disabling such that the claimant is impeded from performing basic work-related activities. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920(a)(4)(i)-(v). If the impairment(s) does meet or equal this standard, the inquiry is over and the claimant is disabled. 20 C.F.R. § 416.920(a)(4). If not, the evaluation continues and the ALJ must determine (4) whether the claimant is capable of performing his past relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If not, the ALJ must (5) consider the claimant's age, education, and prior work experience and evaluate whether she is able to engage in another type of work existing in a significant number of jobs in the national economy. *Id*. At the fourth and fifth steps of the inquiry, the ALJ is required to evaluate the claimant's RFC in calculating which work-related activities she is capable of performing given his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). In the final step, the burden shifts to the Commissioner to show there are significant jobs available that the claimant is able to perform. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).

In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). While reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Young*, 362 F.3d at 1001.Although the Court reviews the ALJ's decision

deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation omitted). Even where "reasonable minds could differ" or an alternative position is also supported by substantial evidence, the ALJ's judgment must be affirmed if supported by substantial evidence. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008); *Scheck*, 357 F.3d at 699. On the other hand, the Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535,539 (7th Cir. 2003); *see also*, 42 U.S.C.§ 405(g).

## III.  Discussion

The Court remands this case because the ALJ failed to properly analyze the consistency of Ms. Druck's RFC Questionnaire with the administrative record, as required by the Social Security regulations. For claims filed after March 27, 2017, the old "treating physician rule"[2] has been replaced by 20 C.F.R. § 404.1520c. Treating physicians' opinions are no longer entitled to presumptive controlling weight; the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Now, the Commissioner does not "articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your record;" instead, the ALJ "will articulate how [the ALJ] considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in" the regulation. 20 C.F.R. § 404.1520c(b)(1). Consistency and supportability "are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be," and, "[t]herefore we will explain how we considered the

---

[2]    20 C.F.R. § 404.1527.

supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision." 20 C.F.R. § 404.1520c(b)(2). The ALJ may consider the other factors (*e.g.*, the treating relationship or the provider's specialty), but is not required to do so. *Id.* Regarding the consistency factor, the regulation states "[t]he more consistent a medical opinion…is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion…will be." 20 C.F.R. § 404.1520c(c)(2).

On the issue of consistency, the ALJ's analysis leaves the Court with more questions than answers. First, the ALJ claims that "[Plaintiff's] testimony, numerous medical appointments, and her reports regarding walking outside and at department stores contradict the statement that the claimant could not leave her home or interact appropriately with the general public." (R. 29.) It is unclear why the ALJ quibbled with the finding that Plaintiff would struggle to interact with the general public, when his RFC precluded Plaintiff from working directly with the public, except for "brief and superficial interaction with the public which is incidental to her primary job duties." (R. 25.) The Court does not understand how the ALJ could determine that such a finding was inconsistent with the record and then incorporate that very limitation into his RFC. Additionally, the citation to testimony and "numerous medical appointments" is too vague to allow the Court to review the ALJ's finding on consistency. While there are records of Plaintiff leaving her home occasionally to get exercise, there are multiple indications Plaintiff was unwilling or unable to leave her home without her husband or taking a sedative beforehand. (R. 955, 962, 965, 976, 979, 983, 1128.) In other words, there are "numerous medical appointments" that show that Plaintiff struggled mightily to leave her home, which was consistent with Ms. Druck's opinion. If the ALJ is going to find Ms. Druck's opinion inconsistent with the record, the Court cannot adequately review that conclusion without a clearer understanding of the portions of the record that the ALJ relied on to reject Ms. Druck's findings. Such sweeping references to the record as the ALJ made here will not suffice.

Second, the ALJ found that "the largely normal treating source and consultative mental status examinations show that" Plaintiff was limited to skilled or unskilled work.[3] Once again, the Court cannot tell which "largely normal treating source…examinations" the ALJ is referencing here. While certain aspects of the mental health treatment records show that Plaintiff presented normally in some ways, they also show Plaintiff was experiencing multiple diagnosable mental illnesses that required medication management and were consistently affecting her mood, relationships, sleep, and other functioning. "Though the ALJ need not discuss every shred of evidence in the record, she 'may not ignore an entire line of evidence' that runs contrary to her conclusions." *McNeal v. Colvin*, 2016 WL 1594992, at *7 (N.D. Ill. Apr. 21, 2016) (quoting *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003)). By failing to consider the evidence that ran contrary to his conclusions, the ALJ failed to adequately analyze the consistency factor in determining how persuasive he found Ms. Druck's opinion. Although the revised regulations have limited the scope of the ALJ's evaluation of (and deference to) treating source opinions, the ALJ must still demonstrate substantial evidence to support the factors that must be considered under the new regulations. Here, the ALJ's conclusory discussion relating to the consistency of Ms. Druck's opinion with the record was insufficient and requires remand.

## IV. Conclusion

The Commissioner's Motion for Summary Judgment (dkt. 23) is denied and Plaintiff's motion (dkt. 17) is granted. The case is remanded for further proceedings consistent with this opinion.

Entered: February 1, 2022

_____

United States Magistrate Judge,
Susan E. Cox

---

[3] As evidenced from the block quote *supra*, the Court is uncertain whether the ALJ was evaluating the Plaintiff's ability to perform skilled or unskilled work. That issue must also be resolved on remand.